UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN GOODMAN,
        Plaintiff,                                Case No. 06-10436
                                                        HON. BERNARD A. FRIEDMAN

vs.

ST. JOSEPH MERCY OAKLAND,
        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

Plaintiff Karen Goodman ("Goodman") has filed a two count Complaint alleging discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA") and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") against Defendant St. Joseph Mercy-Oakland ("SJMO" or "Defendant").

SJMO has filed a motion for summary judgment on both counts. In support of its motion, SJMO asserts that parts of Goodman's claim are barred by procedural defects, that Goodman fails to state a claim in that she is not disabled, and that Goodman was terminated for a non-pretextual reason.

### II.    Facts

Goodman began working in SJMO's inpatient rehabilitation unit as a part time recreational therapist in 1991. Dft. Exh. 1. Goodman's employment was through a contracting service for SJMO. She was first employed in this capacity as a .5 full-time equivalent ("FTE").

1

In 1999, Goodman's supervisor, Jody DiMaria, increased Goodman from a .5 FTE to a .75 FTE after a full-time recreational therapist left the hospital.  Goodman was the only recreational therapist in the inpatient unit from 1999 through June 24, 2005.  Dft. Exh. 2.

SJMO hired Goodman directly in 2002.  She was laid off on June 24, 2005 as a result of SJMO's work-force reduction, when Goodman's position as a recreational therapist was eliminated from the SJMO budget.

Inpatient recreational therapy is not a "billable service" for the hospital.  Dft. Exh. 1 and 2.  Health insurance companies and Medicare/Medicaid do not pay for recreational therapy services.  Id..  However, inpatient recreational therapy can be billed through auto insurance or workers' compensation.  Id.  Goodman's former supervisor, Jody DiMaria, explained in her deposition that less than one percent of SJMO inpatient rehabilitation involves reimbursable workers' compensation or auto insurance patients, and 99% of the patients in the SJMO inpatient unit are Medicare/private insurance patients, whose insurance does not cover their recreational therapy.  Dft. Exh. 2.

In 1987, prior to her employment with SJMO, Goodman was involved in a car accident, and sustained injuries to her right knee and back.  Goodman's medical records identify her condition as arthrofibrosis, progressive right knee instability, and limited range of motion in her knee.  Dft. Exh.1 and 6.

Goodman took medical leaves lasting from two to six weeks in 1992, 1993, 1994, 1995, 1997, 1999, 2003 and 2005.  Id.  She does not have a permanent physical restriction or a doctor's notice requiring the use of crutches on file with SJMO.  While working with SJMO, Goodman used crutches.  The periods during which Goodman was medically required by her physician to

use crutches were temporary, in 1992, 1995 and 2005.

According to Goodman's deposition testimony, she owns her own two-story home without any ramps or adaptive devices, and with her bedroom on the second floor, and storage which she uses in the basement. Dft. Exh.1. She drives a car without adaptive devices, travels, socializes with friends, takes care of her pets, does her own grocery and other shopping, gardens, and exercises daily using a stationary bike. Id. Goodman states that she has used either one or two crutches since 1987, and without crutches, she is limited to leaning and hopping. Id. While working for SJMO, Goodman took her patients on outings to restaurants and to the mall. Id. Goodman further testified that when working at SJMO, she would park on the fourth floor, "take the elevator from the parking structure down to the first floor, walk through the hospital to get to a different elevator and then go up to the fourth floor." Id.

When Goodman was hired in 1991, she made her physical limitations known, and her 1991 Employee Health-Medical History Form states, "Rt. Knee has been badly damaged. Can't bend knee. . . Will need crutches when on her feet. Is sure she can handle the job by her description." Pltf. Exh. 6. In 1991 Goodman requested accommodations with her work requirements, including "assistance with transferring patients, assistance with moving equipment that weighs more than 15 pounds. . . [and] assistance with activities involving bending my right knee." Id. DiMaria has testified that in addition to such accommodation, Goodman always used crutches at work. Dft. Exh. 2.

On July 1, 2003, Goodman's position was reduced from .75 FTE to .5 FTE. Dft. Exh. 1. The decision to reduce Goodman's employment was made by Lori Shephard, who was DiMaria's boss at the time. Dft. Exh. 2 and 3. When the decision to reduce Goodman's hours

was made, Goodman was on medical leave for a knee surgery. Shepard testified in her deposition that the decision to reduce Goodman's position was made to meet the budget, was not related to any alleged disability, and that Goodman's position was reduced because it was a non-reimbursable position. Dft. Exh. 3. That same year, two other Rehabilitation Department clerical employees were laid off, and Shepard herself was also laid off. Dft. Exh. 1 and 3.

DiMaria informed Goodman of her reduction in hours upon Goodman's return. Dft. Exh. 1. Goodman returned to work with "temporary restrictions" on April 22, 2003, and returned to full duty without restrictions on April 29, 2003. Dft. Exh. 3. Between April 2003 and January 2005, Goodman worked for SJMO without any medical restrictions or limitations.

In January, 2005 Goodman had another surgery on her knee. Dft. Exh. 1. She was approved for FMLA leave, and began her medical leave on January 11, 2005. Id. Goodman was originally scheduled to return to work on March 29, 2005, with restrictions including limitations on lifting/carrying, pushing/pulling, repetitive motions, and walking/standing up to 45 minutes. Dft. Exh. 1. Goodman also had a partial weight bearing restriction with the use of crutches. Id. On April 14, 2005 Goodman's doctor changed her restrictions, extending her walk/stand limitation, and changing her weight bearing restriction. She returned to work on April 26, 2005. Dft. Exh. 1; Pltf. Exh. 10.

Between January and March, 2005, DiMaria and her supervisor, Mark McNash, engaged in the budgeting process for the fiscal year to begin July 1, 2005. Dft. Exh. 4. McNash was instructed by his superiors to meet certain financial targets, and to make cost reductions. Id. McNash testified in his deposition that in order to do so, he examined his revenues and his expenses, and determined that he had to cut 13 FTE positions. Id. DiMaria worked with

4

McNash in determining that they would need to eliminate non-reimbursable positions.  She consulted with two doctors responsible for rehabilitation therapy, who both agreed that because recreational therapy is a non-reimbursable service, and there was no medical detriment to patients if such therapy was removed, Goodman's position should be among those eliminated.  Dft. Exh. 2, 7, 8, 16.  The decision to eliminate Goodman's part-time recreational therapy position was approved on March 11, 2005.  Dft. Exh. 2.

On May 12, 2005 DiMaria met with Goodman, and told Goodman that her position had been eliminated.  Dft. Exh. 1.  Goodman's last day of employment was June 24, 2005.  Id.  After June 24, 2005, all of the recreational therapy groups were eliminated, recreational therapy outings were discontinued, and the van used for such outings was sold.  SJMO no longer has any recreational therapy groups or outings run by hospital employees.  The recreational therapy position was eliminated from the SJMO budget, and there is no longer any recreational therapy work being performed in the SJMO rehabilitation unit.  Dft. Exh. 1, 2, 16.

In June, 2005, Goodman went to work for St. Joseph Mercy Hospital in Ann Arbor ("SJAA"), without any restrictions.  Dft. Exh. 1.  Goodman had worked as a part-time on-call recreational therapist for SJAA from 4 to 22 hours per week since 1999.  SJAA is owned by Trinity Health-Michigan, which also owns SJMO.

Goodman had a follow-up examination by her doctor in September 2005.  Dft. Exh.1.  Her doctor did not give her any work restrictions.  Id.  Goodman continues to request additional hours of work from SJAA, and would take a full-time, unrestricted position from SJAA if offered.  Id.  She would be willing to drive one to two hours if offered additional work elsewhere.  Id.

At the time Goodman's position was eliminated, SJMO had posted openings for physical and occupational therapists, for which funding came from the same budget as funding for Goodman's position.  Pltf Exh. 1 and 12.  In addition, other employees in the Rehabilitation Unit were given pay raises, also from the same budget.  Id.  DiMaria has testified that the positions posted were for billable physical or occupational therapists, which were unfilled but were budgeted positions.  Dft. Exh. 2.  Goodman has acknowledged that she is not licensed to do occupational or physical therapy.  Dft. Exh.1.  In addition, DiMaria and McNash testified in their depositions that some occupational and physical therapists were being paid under-market, and that selective raises were given in order to prevent their departure from SJMO.  Dft. Exh. 2 and 4.  Both also testified that SJMO experienced extensive turnover in these positions because SJMO paid under-market.  Id.

Goodman filed a complaint with the Michigan Department of Civil Rights/Equal Employment Opportunity Commission ("EEOC") on May 12, 2005.  Her complaint alleged disability discrimination based upon elimination of her job on May 12, 2005.  Dft. Exh.11.  On October 31, 2005, the EEOC mailed Goodman a Dismissal and Notice fo Rights, stating that the EEOC was unable to find an ADA violation.  Exh.12.  Goodman testified that she received the Dismissal on or about November 1, 2005.  Dft. Exh.1.  The Complaint in this matter was filed on January 31, 2006.

**III.   Standard of Review**

Summary judgment is proper where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id. If the movant carries its burden of showing an absence of evidence to support a claim, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

## IV.   Analysis

Plaintiff's Complaint alleges that she was subjected to disability discrimination and a failure to accommodate her disability by Defendant in 2003, when her hours were reduced, and again in 2005, when she was terminated.

### A.   Statute of Limitations

Defendant first argues in its motion that the Court does not have jurisdiction over Goodman's 2003 claims. Defendant points out that an ADA plaintiff is required to file a Charge of Discrimination with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). Goodman did not file an EEOC Complaint regarding her 2003 reduction in hours from a .75 FTE to a .5 FTE. Plaintiff acknowledges that it may not bring a federal claim for her 2003 claims, but argues, correctly, that this Court may maintain pendent claim jurisdiction over her 2003 PWDCRA claims.

Defendant further argues that Plaintiff's claims regarding her treatment in 2005 are untimely. Defendant explains that a plaintiff is required to file a complaint in federal court within 90 days of the EEOC Notice of Right to Sue. 42 U.S.C § 2000e-5(f)(1). Plaintiff's Complaint was filed on January 31, 2006. The Notice of Right to Sue ("the Notice") was mailed on

7

October 31, 2005.  Goodman stated in her deposition that she received the Notice "somewhere around November 1 approximately," (Dft. Exh.1) but stated in her Complaint that she received it on November 3, 2005.  The Court notes that Plaintiff's Complaint is not a verified complaint, and as a notice pleading, is not sufficient to disprove Plaintiff's deposition testimony, which is given under oath.  However, the Court believes that the qualifier of "approximately" given by Plaintiff in her deposition testimony is sufficient to create a question of fact regarding the date which Plaintiff received the Notice.  Assuming that Plaintiff received the Notice on November 3, 2005, Plaintiff's Complaint was filed within the applicable statute of limitations.

      **B.**      **Plaintiff's FTE Reduction and Termination**

The ADA prohibits an employer from discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment."  42. U.S.C. § 12112(a).  A plaintiff may establish unlawful discrimination by introducing direct evidence of intentional discrimination, including evidence that the employer relied on the plaintiff's disability in making its employment decision.  Monette v. Electronic Data Systems Crop., 90 F.3d 1173, 1178 (6th Cir. 1996).

Where no direct evidence of discrimination exists, a plaintiff must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  Under this framework, a plaintiff may establish a prima facie case of discrimination by showing that: (1) she is disabled; (2) she is otherwise qualified for the position; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability;

and (5) after rejection or termination, the position remained open, or the disabled individual was replaced by a member outside the protected class.  Monette, 90 F.3d at 1185.  *McDonnell Douglas* provides that if Plaintiff establishes a *prima facie* case of discrimination, the defendant must then offer a legitimate explanation for its actions.  If the defendant satisfies its burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual.  "Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times."  Hedrick v. Wester Reserve Care System, 355 F.3d 444, 453 (6th Cir. 2004).

"'Direct evidence' is evidence which, if believed, requires the conclusion that unlawful discrimination was a motivating factor in the employer's decision."  Merrill v. Burke E. Porter Machinery Co., 159 Fed.App. 676, 679 (6th Cir. 2006) *citing* Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003).  Goodman has not offered direct evidence that SJMO said or did anything to indicate that her alleged disability was the reason for their decision regarding her FTE reduction or her termination.

Accordingly, Goodman's case relies upon her establishment of a *prima facie* case of discrimination, as set forth in *McDonnell Douglas, supra*.

The ADA defines disability as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual" or "a record of such an impairment."  42 U.S.C. § 12102(2)(A-B).  The PWDCRA defines disability as a "determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder [that] substantially limits one or more of the major life activities of that individual" or a history of such a characteristic.  M.C.L. § 37.1103(d)(i)(A) and (ii).  Because of the similarity between the two definitions, it is appropriate to look to the ADA

for guidance in interpreting the PWDCRA.  Stevens v. Inland Waters, Inc., 220 Mich.App. 212 (1997).

Here, Plaintiff claims that she is disabled in that she is substantially limited in the major life activity of walking.  "Whether a person has a disability under the ADA is an individualized inquiry."  Sutton v. United Airlines, Inc., 527 U.S. 471, 483 (1999).  In *Sutton*, the Supreme Court explained that "it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures- both positive and negative- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the act."  Id. at 482.

Goodman takes measures to mitigate her physical impairment, namely, using crutches.  She has not described any negative effects of using crutches, and in fact, appears to lead a normal life.  Goodman has not described an inability to perform walking activities which the average person does on a daily basis.  As discussed above, Goodman, with the use of crutches, is able to shop, do household chores, work, drive, garden, and walk up and down stairs, among other activities.  Goodman has been able to take responsibility for her patients, driving them on outings, taking them to restaurants and malls, and even working in a golf clinic with them.  Dft. Exh. 1.

Goodman has not established a *prima facie* case of disability.  She has not established the first element of the *McDonnell Douglas* test, namely that she is disabled.  However, even had she met this first element, she additionally has not established the fifth element, requiring evidence that her position remained open while defendant sought other applicants or that she was replaced with a person outside her protected class.  The evidence presented has shown only that her

position was terminated, and that no other person has since filled the position of a recreational therapist at SJMO.

However, the Court finds that even if Goodman had presented a *prima facie* case of disability, Defendant has offered a non-pretextual, non-discriminatory reason for both her reduction in hours and her later termination, which Plaintiff has not satisfactorily refuted.

A plaintiff may demonstrate pre-text by showing that 1) defendant's given reason for her layoff had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain the discharge.  Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325 (6th Cir. 1994).

As explained by DiMaria and Shepard, and discussed above, Goodman's hours were reduced in 2003 in an effort to meet the hospital's budget.  Goodman has not offered any evidence to refute this non-pretextual explanation for why her hours were reduced.

In addition, after her layoff, Goodman was not replaced with another recreational therapist.   DiMaria testified that Goodman's recreational therapist position was eliminated, and is no longer part of the SJMO budget.  DiMaria further testified that the activities previously engaged in by Goodman have been discontinued, that the van that was used for Goodman's outings has been sold, and that SJMO does not have an open position for a recreational therapist in the inpatient Rehabilitation Unit.  These facts are undisputed.  Goodman's argument that SJMO's attempt to fill vacancies in reimbursable non-recreational therapy positions demonstrates pre-text is untenable.  SJMO's attempt to fill such vacancies and/or to offer pay raises to other types of therapists is not evidence of discriminatory treatment and does not contradict SJMO's proffered business reason for eliminating Goodman's non-reimbursable

position.

## V.      Conclusion

Accordingly, for the reasons stated above,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

Dated:  February 14, 2007                ____s/Bernard A. Friedman_____
       Detroit, Michigan                 BERNARD A. FRIEDMAN
                                         CHIEF UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
       Patricia Foster Hommel
    Secretary to Chief Judge Friedman